# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TED KNOX, #N92676, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 17-cv-00572-SMY ) |
| WARDEN BUTLER, WARDEN WATKINS, SUSLER, BEST, WARDEN BROOKS, DR. JOHN TROST, and WARDEN LASHBROOKS, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Ted Knox, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 2). Plaintiff originally brought his claims in *Knox v. Butler, et al.*, Case No. 17-cv-00494-SMY (S.D. Ill.) ("prior action") on May 10, 2017. However, the Court severed that action into several separate cases pursuant to a Memorandum and Order dated May 31, 2017. (Doc. 1). The instant case addresses the claims designated as Count 4, which includes an Eighth Amendment deliberate indifference claim and a First Amendment retaliation claim against Defendants Butler, Watkins, Susler, Best, Brooks, Trost, and Lashbrooks for exposing Plaintiff to environmental tobacco smoke between April 2015 and December 2016. (Doc. 2, pp. 9-11).

This matter is now before the Court for a preliminary review of Count 4 pursuant to 28 U.S.C. § 1915A, which provides:

1

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges that he was moved to Menard's North-2 Cell House on February 20, 2015, which he describes as a disciplinary housing unit. (Doc. 2, p. 14). This was despite his classification as an A-grade, medium security, and low aggression inmate. *Id*. He was placed in Cell #123 on 1-Gallery. *Id*. He was also informed that the gallery was reclassified for general population housing. *Id*.

Prison officials allegedly subjected Plaintiff to "extreme hand-cuffing" procedures in the North-2 Cell House. (Doc. 2, p. 14). Plaintiff was cuffed every time he left the cell. *Id*. This procedure was not used in other units where Plaintiff was previously housed. *Id*.

2

On or around April 1, 2015, Plaintiff first noticed the strong odor of environmental tobacco smoke ("ETS"). (Doc. 2, p. 14). The windows in the North-2 Cell House were opened on that date. *Id*. One of these windows was located directly across from Plaintiff's cell, and he could see prison guards smoking outside of the window. *Id*. Fumes filled the air. *Id*.

Plaintiff filed regular complaints about the ETS with various Menard officials, including Defendants Butler, Watkins, Susler, Best, Brooks, Lashbrooks and Trost. (Doc. 2, p. 14). Plaintiff notified these officials that ETS entered his cell through the window and lingered. *Id*. He also informed them that his right lung once collapsed and remained partially collapsed after surgery. *Id*. He worried that ETS exposure would aggravate his respiratory condition in the future. *Id*.

On June 22, 2015, Plaintiff told Defendant Butler that ETS was entering his cell through the open window and vents in his cell, and that it was allegedly causing him to suffer from severe headaches, dizziness and shortness of breath. (Doc. 2, p. 15). Plaintiff asked Defendant Butler to move him to another cell located in a smoke-free environment. *Id*. Defendant Butler told Plaintiff that she did not have time to discuss a move. *Id*. She explained that the North-2 Cell House would be empty if she moved everyone who had complaints about it. (Doc. 2, pp. 14-15).

On July 14, 2015, Plaintiff again complained directly to Defendant Butler. (Doc. 2, p. 15). He indicated that the ETS was placing his future health in danger. *Id*. Plaintiff also informed Defendant Butler that Illinois Department of Correction's rules and regulations require the prison to be a smoke-free environment. *Id*. Defendant Butler threatened to move Plaintiff to segregation if he continued to write her or stop her with complaints. *Id*.

Plaintiff instead complained to other prison officials, including Defendants Brooks, Lashbrooks, Susler and Best. (Doc. 2, p. 15). He informed each of them of his pre-existing conditions, which included an enlarged heart, partially collapsed lung, and diabetes. *Id*. He explained that ETS would only aggravate these conditions. *Id*. The officials ignored Plaintiff's complaints. *Id*.

Plaintiff then filed a written complaint about the ETS with the Illinois Department of Public Health, the John Howard Association of Illinois and Governor Rauner. (Doc. 2, p. 15). He asked Defendant Watkins to move him away from the ETS on August 2, 2015, after complaining that it was causing severe headaches, dizziness, and heavy coughing. *Id*. Defendant Watkins refused to transfer him anywhere except segregation and told him to file a grievance instead. *Id*. Plaintiff again complained to Defendants Butler and Watkins on August 3, 2015. (Doc. 2, p. 15). They ignored him. (Doc. 2, p. 16).

From August 1, 2015 until September 14, 2015, Plaintiff pleaded with Defendant Susler to close the windows to reduce the ETS. (Doc. 2, p. 16). However, Susler refused and warned him to stop complaining. *Id*.

Plaintiff filed a grievance to address the issue on September 14, 2015. (Doc. 2, p. 16). However, it was denied at the institutional level on December 3, 2015. *Id*. The Administrative Review Board ("ARB") also denied his appeal on April 11, 2016. (Doc. 2, p. 17). Plaintiff continued to complain. *Id*.

When Plaintiff discussed his concerns with Doctor Trost, the defendant indicated that he was "well aware" of Plaintiff's past complaints. (Doc. 2, p. 17). However, after reviewing Plaintiff's x-rays, Doctor Trost told Plaintiff that he would not recommend a cell transfer or a permit for an extra fan. *Id*. He would only issue an extra fan permit after Plaintiff had a heart

attack. *Id*. Because Plaintiff continued having trouble with breathing, coughing, headaches and burning eyes, he continued to plead for a permit. *Id*. In response, Doctor Trost told Plaintiff that "he didn't care about this place (Menard) anymore [because] all you inmates do is cry about everything." (Doc. 2, p. 17).

Plaintiff filed another timely grievance on July 22, 2016, and it was denied on August 12, 2016. (Doc. 2, p. 17). He filed a timely appeal on August 29, 2016, and it was eventually denied on March 3, 2017. *Id*. However, on December 15, 2016, Plaintiff was finally moved to the hospice care housing unit after a correctional officer told him that staff was tired of his complaints and grievances. (Doc. 2, p. 18). Plaintiff now seeks monetary relief against Defendants for violating his rights under the First and Eighth Amendments. (Doc. 2, p. 18).

## Discussion

This severed case addresses the following claims, originally identified as "Count 4" and renumbered for ease of reference as follows:

> **Count 1 -** Eighth Amendment deliberate indifference claim against Butler, Watkins, Susler, Best, Brooks, Trost and Lashbrooks for endangering Plaintiff's present and future health by exposing him to environmental tobacco smoke between April 2015 and December 2016.
>
> **Count 2 -** First Amendment retaliation claim against Butler, Watkins, Susler, Best, Brooks, Trost and Lashbrooks for threatening Plaintiff with segregation when he complained about tobacco smoke exposure between April 2015 and December 2016.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding their merits. **Any claims that are not identified above but are**

**encompassed within "Count 4" are considered dismissed without prejudice from this action.[1]**

## Count 1

The treatment that a prisoner receives and the conditions under which he is confined are subject to Eighth Amendment scrutiny. *Helling v. McKinney*, 509 U.S. 25, 32 (1983). The Eighth Amendment protects prisoners against cruel and unusual punishment. U.S. CONST., amend. VIII. Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

Eighth Amendment protections extend to an inmate's present and future health. *Helling*, 509 U.S. at 33. Prison officials cannot hold inmates in unsafe conditions simply because the harm to their health has not yet occurred. *Id*. (*Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982)). A prison official may be liable for deliberate indifference under the Eighth Amendment if the official knows of and disregards an excessive risk to an inmate's present or future health or safety. *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994). *See, e.g., Turley v. Bedinger*, 542 F. App'x 531 (7th Cir. 2013) (confinement in a small cell with excessive ETS exposure and lack of proper ventilation stated Eighth Amendment claim); *Powers v. Snyder*, 484 F.3d 929, 932-33 (7th Cir. 2007) (same). The allegations in the Complaint suggest that the defendants exhibited deliberate indifference to Plaintiff's present and future health.

Plaintiff claims that he was exposed to unusually high levels of ETS because of his placement in a poorly ventilated cell near a window where prison officials routinely smoke.

---

[1] This includes any Eighth Amendment claim Plaintiff intended to bring against the defendants for "extreme handcuffing" or for deliberate indifference to his medical needs. He did not specifically identify or develop either of these claims in the Complaint. Both are considered dismissed without prejudice from this action.

(Doc. 2, pp. 14-18). He allegedly informed each defendant about his preexisting health conditions and requested a transfer to a smoke-free environment, but they denied or ignored his requests from April 2015 until December 2016. *Id*. These allegations support an Eighth Amendment claim against all of the defendants for subjecting Plaintiff to an excessive risk of harm to his *future* health by exposing him to unusually high levels of ETS at Menard.

Plaintiff also notified Defendants Butler, Watkins and Trost that he was presently suffering from headaches, dizziness, breathing difficulties, and/or coughing because of his excessive exposure to ETS. (Doc. 2, pp. 14-18). He asked each of these defendants to take steps to reduce his ETS exposure and to transfer him to a smoke-free environment. *Id*. They refused. *Id*. These allegations support an Eighth Amendment claim against Defendants Butler, Watkins and Trost for subjecting Plaintiff to an excessive risk of harm to his *present* health by exposing him to unusually high levels of ETS at Menard.

Accordingly, Count 1 shall proceed against Defendants Butler, Watkins, and Trost under the *present* and *future* health rubrics. Count 1 shall proceed against Defendants Susler, Best, Brooks, and Lashbrooks under the *future* health rubric only.

**Count 2**

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). To establish a prima facie case of retaliation, an inmate must demonstrate that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter protected speech; and (3) his protected speech was a motivating factor

7

in the defendants' actions. *Antoine v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012) (citations omitted); *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009) (internal citations omitted). With regard to the third element, the plaintiff must show the existence of "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason,* 542 F.3d 545, 551(7th Cir. 2008) (internal citations omitted).

Plaintiff alleges that Defendants Butler and Watkins threatened him with segregation and that Defendant Susler told him to stop complaining, in response to the grievances he submitted regarding his excessive ETS exposure. (Doc. 2, pp. 14-18). He nevertheless continued to file grievances without being placed in segregation or being punished for doing so. *Bridges*, 557 F.3d at 546, 553 (plaintiff must suffer a deprivation "that would likely deter First Amendment activity in the future" and would deter "'a person of ordinary firmness'" from exercising his or her First Amendment rights). Moreover, he was eventually transferred to a smoke-free environment *because of* his numerous complaints, and Plaintiff does not allege that his transfer was delayed in retaliation for his complaints. (Doc. 2, pp. 14-18). As such, the Complaint does not state a viable retaliation claim against any of the defendants, including Defendant Butler, Watkins or Susler. Count 2 shall therefore be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted against the defendants.

**IT IS ORDERED** that **COUNT 1** survives screening and is subject to further review against Defendants **BUTLER, WATKINS, SUSLER, BEST, BROOKS, TROST** and **LASHBROOKS.**

With respect to **COUNT 1**, the Clerk of Court shall prepare for Defendants **BUTLER, WATKINS, SUSLER, BEST, BROOKS, TROST** and **LASHBROOKS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Memorandum and Severance Order (Doc. 1), the Complaint (Doc. 2) and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant and the Court will require Defendant to pay the full costs of formal service to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to United States Magistrate Judge **Daly** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 20, 2017**

                                                     **s/ STACI M. YANDLE**
                                                   **District Judge**
                                                 **United States District Court**