## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TED KNOX, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )  Case No. 17-CV-572-SMY |
| WARDEN BUTLER, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Ted Knox, an inmate of the Illinois Department of Corrections currently incarcerated at Menard Correctional Center ("Menard"), filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. This case was severed from Plaintiff's original lawsuit, and after initial screening under 28 U.S.C. § 1915A, Plaintiff proceeded on a claim of deliberate indifference to serious medical needs related to exposure to environmental tobacco smoke.

The case is now before the Court for consideration of the Motions for Summary Judgment (Docs. 56 and 62) filed by Defendants Trost, Butler, Watkins, Susler, Brooks and Lashbrook. Plaintiff responded in opposition to the Motions (Doc. 74) and filed a Motion Pursuant to Federal Rule of Civil Procedure 56(c) (Doc. 75). For the following reasons, the Motions for Summary Judgment are **GRANTED.**

### Material Facts

Plaintiff was moved to a cell in the North 2 cell house of Menard in February 2015. (Doc. 57-4, p. 6). Plaintiff testified that there was a window across from the cell that looked out onto the parking lot which had a picnic table where Menard staff members would go to smoke. (*Id.*, pp. 5,

6). The window was opened in April 2015 and Plaintiff began to smell environmental tobacco smoke ("ETS") in his cell. (Doc. 2, p. 14). The window was open much of the time, although it was closed during the winter months. (Doc. 57-4, pp. 6, 21-22). Menard staff would also smoke in "the tunnel," causing ETS to come into the cell through the vents. (Doc. 74, p. 26). This resulted in Plaintiff "coughing a lot, eyes were watering, constant headaches, dizziness, stuff along those lines." (Doc. 57-4, p. 15). Plaintiff was moved out of North 2 in December 2016, after which he stopped having these complaints. (*Id.*, p. 16).

Plaintiff had several prior and current medical conditions at the time he was housed in North 2. In 2003, he suffered a right pneumothorax (collapsed lung) which resolved after he was admitted to Heartland Regional Medical Center. (Doc. 74-1, pp. 31-32). Plaintiff's heart size is "at the upper limits of normal" and he suffers from diabetes and hypertension. (*Id.*, p. 33). According to Plaintiff, he told each of the prison staff Defendants (Warden Butler, Assistant Warden Lashbrook, Assistant Warden Watkins, Assistant Warden Brooks and Corrections Officer Susler) about his pre-existing health conditions and the symptoms he was suffering from exposure to ETS and asked them either to be moved or to close the window. (Doc. 57-4, pp. 16-17). Each either ignored him or refused.

Plaintiff was seen for medical treatment at least 17 times during the period he was housed in North 2 cellhouse (at least 12 of which took place while he was exposed to ETS), including twice by Dr. Trost. (Doc. 57-1, pp. 1-29). By and large, these visits were part of his treatment through the Diabetes and Hypertension Chronic Care Clinic; either for exams or blood draws. (*Id.*). None of the contemporaneous medical records note any of the ETS related complaints made by Plaintiff, either as reported or observed. (*Id.*). His diabetes and hypertension were generally characterized as stable and well-controlled throughout the period he was housed in North 2. (*Id.*).

Three sets of lab results from Plaintiff's time in North 2 reflect blood glucose levels that were slightly elevated and slightly low BUN/creatinine ratios on July 16, 2016, November 9, 2016 and December 6, 2016 (Doc. 74-1, pp. 35, 36, 40). The July and November tests also reflect a slightly elevated HB A1C. (*Id.*, pp. 35, 36).

Plaintiff testified that he spoke with Dr. Trost about his issues with ETS, and that Dr. Trost ordered chest x-rays but declined to recommend a change of cell or to issue a permit for a second fan in his cell. (Doc. 57-4, pp. 7-9). The x-rays were taken on May 26, 2016 and showed that Plaintiff's heart size is at the "upper limits of normal," that his lungs were clear, that there was no pleural effusion, and that there was no significant change from a prior set of x-rays. (Doc. 74-1, p. 33). Dr. Trost reviewed the results and found them to be normal or stable. (*Id.*, p. 34).[1]

## Discussion

### Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 56(c)

As an initial matter, Plaintiff requests that the Court deny Defendants' Motions for Summary Judgment because he did not receive a copy of Dr. Trost's Exhibit C, an aerial photograph purporting to show the distance between the window near Plaintiff's cell and the picnic table in the parking lot where staff would smoke. (Doc. 75). Plaintiff claims that he cannot adequately respond to the Motions without the exhibit.[2]

The distance between Plaintiff's cell and the picnic table is not a material fact for purposes of summary judgment in this case. As such, the failure to produce the exhibit (while problematic

---

[1] Plaintiff attached as exhibits to his Response to Defendants' Motions, several publications from the Centers for Disease Control and American Cancer Society on the dangers of smoking. (*Id.*, pp. 70-97).

[2] In his Motion, Trost states that because he has been informed that the photograph would be considered contraband under IDOC rules, he would only produce it if ordered by the Court. (Doc. 57, p. 2).

from a litigation standpoint) has no bearing on Plaintiff's ability to adequately respond. The Motion (Doc. 75) is therefore **DENIED**.

## Summary Judgment

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party is entitled to summary judgment where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. When deciding a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004). However, if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986).

Prison officials inflict cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on such a claim, an inmate must show (1) that he suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016).

A serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). In cases involving risk of future injuries from exposure to ETS, the first element may be satisfied by showing that the Plaintiff is

"being exposed to unreasonably high levels of ETS." *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The Supreme Court has defined an unreasonably high level of ETS as one that "pose[s] an unreasonable risk of serious damage to [a prisoner's] future health." *Id.* This "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id.*

The second element – deliberate indifference – requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

Here, Plaintiff has failed to present evidence sufficient to satisfy the objective element for either present or future medical conditions. Unquestionably, Plaintiff suffered from serious medical conditions before being moved to North 2 as he was regularly seen and treated for hypertension and diabetes.[3] However, he has produced no evidence that his exposure to ETS made these conditions worse. *cf. Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (Plaintiff who alleged ETS exacerbated his chronic asthma stated a valid deliberate indifference claim for present injuries). Merely pointing to test results showing values slightly outside the reference ranges is not enough, especially without any evidence as to what Plaintiff's values were before and after exposure.

---

[3] Plaintiff's records reflect a collapsed lung in 2003, but the hospital report shows it was resolved by the time he was discharged and no evidence of recurrence was seen in the May 26, 2016 x-rays. Similarly, Plaintiff's claim that he has an "enlarged heart"—in addition to being at odds with the medical evidence stating that it is on the large side of normal— is not linked to any symptoms or issues.

With respect to the existence of a present serious medical condition, the relevant question is whether the symptoms Plaintiff describes – coughing, eyes watering, constant headaches, and dizziness – constitute objectively serious medical conditions unto themselves. Based on Seventh Circuit precedent, they do not. *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (holding that a plaintiff failed to state a claim upon which relief may be granted because his present injuries—breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy— were not objectively serious).

Further, there is no evidence from which a jury could reasonably return a verdict for monetary damages. Under *Helling,* a plaintiff may pursue injunctive relief to prevent future harm. That is not the situation here, however. Plaintiff was removed from the offending situation and is seeking monetary damages. While a prisoner can obtain monetary damages for future risk of harm, he must demonstrate "to a degree of reasonable medical certainty" that an actual medical risk existed. *Henderson,* 196 F.3d at 851. Plaintiff's only evidence regarding the risk of potential long- term harm from exposure to ETS is his own lay statements and pamphlets from the CDC and American Cancer Society regarding the risks of smoking. But to support or oppose a motion for summary judgment, materials presented must be admissible in evidence or point to evidence that would be admissible at trial. *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir. 2018). *See also Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) ("[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion."). The pamphlets are inadmissible hearsay under Federal Rules of Evidence 801 and 802 as they are out of court statements offered for the truth of the matters asserted therein.

Moreover, to defeat a motion for summary judgment on a monetary-damages claim for increased risk of future harm due to ETS exposure, a plaintiff must "proffer competent and reliable

expert medical testimony that there was a reasonable medical certainty that he himself faces some defined level of increased risk of developing a serious medical condition and that this increased risk was proximately caused by his exposure to second-hand smoke[.]" *Henderson*, 196 F.3d at 852. Plaintiff has not done so, and summary judgment is warranted.[4]

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (Docs. 56 and 62) are **GRANTED** and Plaintiff's Motion under Rule 56(c) (Doc. 75) is **DENIED**. Plaintiff's claims against Defendants Dr. Trost, Butler, Watkins, Susler, Brooks and Lashbrook are **DISMISSED with prejudice**. All pending motions are **MOOT**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

**DATED:  June 22, 2020**

s/ Staci M. Yandle<br>
**STACI M. YANDLE**<br>
**United States District Judge**

---

[4] Defendants Butler, Watkins, Susler, Brooks and Lashbrook also assert the defense of qualified immunity. Because summary judgment is appropriate on the merits of the case, the Court will not address this issue.